# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| MEGAN, S.[1], <br><br> Plaintiff, <br><br> v. <br><br> **NANCY A. BERRYHILL,** Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, <br><br> Defendant. | Case No. 6:18-cv-672-SI <br><br> **OPINION AND ORDER** |

John E. Haapala, Jr., 401 E. 10th Avenue, Suite 240, Eugene, OR 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Jefferey E. Staples, Special Assistant United States Attorney, OFFICE OF GENERAL COUNSEL, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104. Of Attorneys for Defendant.

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**Michael H. Simon, District Judge.**

Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for Social Security Disability Benefits ("DIB"). For the reasons stated below, the Commissioner's decision is REVERSED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff filed a protective application for DIB on June 5, 2014, alleging disability beginning on May 21, 2014. AR 84. Plaintiff was 24 years old at the alleged disability onset date. Plaintiff alleged disability due to melanoma and lymph node removal. *Id.* The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 84-89, 90-97. After the decisions, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 112-13. At the hearing, Plaintiff's counsel discussed amending her application to request benefits only for a closed period, from May 21, 2014 through August 1, 2015, when Plaintiff began working a full time job at Rite Aid. AR 42. Counsel was not prepared at that time to stipulate to such an amendment because Plaintiff was considering whether the first few months of her Rite Aid job should be considered a trial work period. AR 42-43. The ALJ agreed to leave the record open so Plaintiff could later make such an amendment. It does not appear from the record that Plaintiff made such an amendment before the Commissioner. On March 7, 2017, the ALJ found Plaintiff not disabled under the Social Security Act (the "Act"), without considering only a closed period. AR 15-22. Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-3. Plaintiff seeks judicial review of that decision. In Plaintiff's brief before this Court, she asserts that she is requesting disability for a closed period, from May 21, 2014, through August 1, 2015.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

See also *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C. The ALJ's Decision**

At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity during three time periods: from June 2014 to July 2014; from August 2015 to December 2015; and from January 2016 to August 2016. AR 17. Because, however, there was a continuous 12-month period between July 2014 and August 2015 during which Plaintiff was not engaged in

substantial gainful activity, the ALJ found in Plaintiff's favor at step one and proceeded to step two. AR 18.

At step two, the ALJ determined that Plaintiff had the following medically determinable impairment: melanoma with lymph node removal. *Id.* Rejecting testimony by both Plaintiff and Plaintiff's sister, however, the ALJ determined that Plaintiff's impairment or combination of impairments were not severe because they did not significantly limit Plaintiff's ability to perform basic work-related activities for 12 consecutive months. *Id.* Because the ALJ found that Plaintiff did not have a severe impairment or combination of impairments at step two, the ALJ determined that Plaintiff was not disabled within the meaning of the Act.

## DISCUSSION

Plaintiff seeks review of the ALJ's decision that Plaintiff was not disabled. Plaintiff argues that the ALJ erred by improperly rejecting the testimony of both Plaintiff and her sister, which Plaintiff argues would demonstrate that she had a severe impairment at step two.[2] The Commissioner responds that the ALJ provided a clear and convincing reason to discount Plaintiff's testimony—because she improved with treatment. For the same reason, the Commissioner argues that the ALJ provided a germane reason for discounting the lay witness testimony of Plaintiff's sister. For the reasons discussed below, the Court finds that the ALJ did not provide a clear and convincing reason for rejecting Plaintiff's testimony. The Court further finds that the ALJ did not provide germane reasons for rejecting the testimony of Plaintiff's sister.

---

[2] Plaintiff does not specifically argue that the ALJ erred at step one, in which the ALJ was found in Plaintiff's favor. Thus, any error likely would be harmless. Plaintiff's factual recitation includes that she did not work in late June and July 2014 and that she did not return to full time work until August 2015.

A. Symptom Evaluation

   1. Plaintiff's Symptom Testimony

There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell*, 947 F.2d at 345-46).

The ALJ's decision to discount testimony about subjective symptoms may be upheld overall even if not all the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount subjective symptoms "solely

because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In her application for disability, Plaintiff claimed that she was disabled by "melanoma" and "lymph node removal," which limited her ability to work. AR 217. In her June 2014 function report, Plaintiff claimed she was "off work due to doctor note" and that she was "very limited" in her ability to move around due to "bad swelling" in her leg. AR 247. At her January 2017 administrative hearing, Plaintiff testified that she had undergone two surgical interventions to remove cancers from her right calf and her lymph nodes. AR 53. She testified that after these surgeries, she was "wrapped" for eight weeks from her "toes up to [her] hips" with a "drain tube" to drain excess fluid. *Id.* After the drain tube was removed, she began chemotherapy treatment five days per week, but had to discontinue after four weeks due to complications with her liver. *Id.* A lymphedema specialist evaluated Plaintiff's swollen leg, a condition that made it uncomfortable for Plaintiff to sit or stand. AR 54.

Plaintiff then resumed chemotherapy treatment three days per week. AR 53. Plaintiff testified that after resuming chemotherapy treatment she experienced adverse side effects for the next eleven months, including sensory impairment and illness. AR 54-56. She claimed that her depth perception was impaired, which prevented her from being able to drive. AR 55. She relied on her family and friends to drive her to her appointments in Eugene, Oregon, from her home in Roseburg, Oregon. These commutes took several hours, three days per week. Plaintiff claims that during her trips, she had to stop three times because of swelling and pain in her leg. AR 55. Plaintiff reported that the swelling continued in her leg for approximately four to five months, and afterward would flare-up occasionally, requiring her to wear compression stockings or bandages. AR 54. Plaintiff also testified that her chemotherapy treatments caused her to become

ill. Plaintiff testified that after treatments her temperature would spike to 104-degrees and she would experience nausea and flu-like symptoms. AR 55.

Plaintiff testified that a few months after her surgeries, she attempted to return to work, believing that with a stool she could sit for most of the work day. AR 55-56. After one week, however, she became severely sick and could not continue working. AR 56. Plaintiff stated that her doctor explained that Plaintiff's immune system was "shot" due to her chemotherapy treatment. AR 55. Plaintiff testified that she did not return to work after this failed attempt until the end of August 2015. *Id.*

The ALJ determined that based on the objective medical evidence, Plaintiff's medically determinable impairments of melanoma with lymph node removal could reasonably be expected to cause some of Plaintiff's alleged symptoms. But the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects were not entirely consistent with the medical evidence.[3] The ALJ stated that, while Plaintiff has "some limitations from her impairment and the resultant treatment," the evidence "also reveals [Plaintiff's] symptoms improved over time." AR 19. The ALJ also considered the fact that Plaintiff returned to work and collected unemployment benefits as contradicting the alleged severity of her symptoms.

The Commissioner only argues that the ALJ's finding that Plaintiff's symptoms improved over time is supported by substantial evidence in the record. Although the Commissioner does not expressly concede that the ALJ erred in his other reasons, the Commissioner notes that to the extent any other reason provided by the ALJ is erroneous that error is harmless. The Commissioner does not, however, defend any other reason or respond to Plaintiff's arguments challenging those other reasons. Accordingly, the Commissioner has

---

[3] The ALJ did not find evidence of malingering.

waived any argument that the ALJ provided a clear and convincing reason other than Plaintiff's purported improvement. *See, e.g.*, *Alesia v. Berryhill*, 2018 WL 3920534, at *7 (N.D. Ill. Aug. 16, 2018) (finding that the Commissioner's "conclusory assertion and overly broad evidentiary citation" is not a sufficient argument and thus waives any argument that the ALJ's conclusion was legally sufficient); *Kelly v. Colvin*, 2015 WL 4730119, at *5 (N.D. Ill. Aug. 10, 2015) (finding that the Commissioner's failure to defend the ALJ's assessment on certain grounds waived those issues).

The ALJ noted that medical records show that Plaintiff was diagnosed with metastatic melanoma and underwent a right groin dissection in June 2014 to remove a portion of her right calf and lymph nodes. The ALJ explained that although treatment notes show that following the surgery Plaintiff complained of ongoing swelling and numbness in her leg, by July 2014 her medical reports indicate that she was "doing well" and that the incision site was healing. AR 19. The ALJ, however, ignores that in the same note Plaintiff complained of "swelling in her foot" that resolves when she elevates it. AR 360. In another note during the same month, Plaintiff was told to "continue wrapping or elevating her leg" and told to "minimize activity" on it. AR 362.

The ALJ further noted that during a July 2014 oncology visit, Plaintiff was reported to be doing "very well" and "in her usual state of health." The ALJ, however, ignored that the same report that showed Plaintiff was experiencing "slight swelling of her right lower extremity" and gave instruction to the office to "follow this closely going forward." AR 432. In sum, Plaintiff had undergone surgery and her progress notes indicate that she was recovering well, but they also documented ongoing problems with Plaintiff's right leg. Healing post-surgery and having improvement with some symptoms is not a clear and convincing reason to discount Plaintiff's testimony regarding other symptoms that she consistently reported as ongoing. The ALJ failed

clearly and convincingly to explain how "doing well" following surgery contradicts Plaintiff's repeated and documented complaints of persistent swelling in her right leg.

The ALJ rejected Plaintiff's symptom testimony of nausea, fever, and itching caused by interferon treatment, citing to treatment notes that report Plaintiff "maintained a positive outlook." A positive outlook, however, is not a convincing reason to discredit complaints of illness. Indeed, it is irrelevant.

Despite acknowledging reports that Plaintiff's interferon dosing was reduced because of liver complications, the ALJ explained that Plaintiff suffered "only mild arthralgias, low-grade-fevers, and moderate pruritis"[4] and was noted to be "up and out of bed for greater than fifty percent of each day" and "ambulatory and independent in her activities of daily living." AR 19 (quoting AR 425, a chart note from a medical visit on August 18, 2014). Although it is unclear the precise amount of time Plaintiff was spending out of bed daily or what daily activities she was involved in, it nonetheless does not contradict the multiple documented illnesses Plaintiff experienced as a result of chemotherapy treatment.[5] These are not clear and convincing reasons.

The remainder of the ALJ's analysis suffers from similar flawed reasoning. The ALJ discredits medical reports noting Plaintiff complained of fatigue, lower back pain, intermittent

---

[4] The Court notes that the ALJ ignores, or perhaps mischaracterizes, the progress note cited, which states: "[Plaintiff] *continues to experience* low-grade fevers, mild arthralgias, *mild myalgias*, and at times *moderate to severe* pruritus since initiation of adjuvant interferon therapy." AR 425 (emphasis added). The progress note further shows Plaintiff reported also experiencing "progressive fatigue." *Id.*

[5] The ALJ disregards a September 2014 complaint indicating that Plaintiff was having swelling at the incision site and occasional swelling in her foot because there were "no objective abnormalities observed during her appointment." The ALJ may not discount subjective symptoms "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. Because the ALJ fails to point to specific evidence that contradicts the September 2014 complaints, the ALJ fails to provide a clear and convincing reason.

leg swelling and numbness because the reports also noted that Plaintiff had "done remarkably well;" had "completed the initial interferon treatment;" was "otherwise doing well;" was "tolerating treatment well;" and was "getting married and . . . happy overall with her treatment." AR 20. None of the ALJ's citations to Plaintiff's medical record, however, contradict Plaintiff symptom testimony of leg pain, fatigue, alopecia, transaminitis, neuropathy, moderate pruritis, insomnia, all of which are documented in various reports in the medical record.

Indeed, Plaintiff's symptoms during the relevant time period are supported in the medical evidence. The record indicates that in April 2014 Plaintiff underwent a sentinel lymph node biopsy on her right calf, which revealed melanoma. AR 347. In May 2014, Plaintiff was diagnosed with metastatic melanoma of the groin lymph nodes. AR 332. In June 2014, Plaintiff was reported to have residual numbness on the top of the leg down to the knee. AR 350. July 2014 records indicate that Plaintiff's incision site was healing and the drain outputs were removed. AR 432. That month she started "high-dose" interferon treatment. *Id.* In August 2014, Plaintiff had to reduce interferon dosing due to liver complications, transaminitis and hyperbilirubinemia, with low-grade fevers, mild arthralgias, mild myalgias, and moderate to severe pruritis. AR 425, 429. In September 2014, Plaintiff completed her initial interferon treatment, and started a low-dose maintenance therapy three times per week. AR 423. That month she complained of swelling at the surgical incision site, swelling in her foot, and swelling in her thigh. AR 359. In November 2014, Plaintiff developed lower back pain with radicular symptoms into her left leg, including numbness. Her symptoms persisted despite attending physical therapy. Imaging of her lumbar spine showed that Plaintiff suffered from a paracentral disc protrusion at the L5-S1 level effacing the left S1 nerve root. AR 418. In December 2014, five months after beginning her interferon treatment, her providers considered ending treatment

if they could not get her pain under control. AR 410 ("[G]oing forward if we cannot get better control of her pain, it may be reasonable to discontinue the interferon."). The following month, Plaintiff was reported to have ongoing lymphedema present in the right thigh. AR 452.

From January to April 2015, Plaintiff reported on multiple occasions mild fatigue and low-grade fevers due to her interferon injections. *See, e.g.*, AR 555. In June 2015, Plaintiff reported increased symptoms, complaining of migraine headaches following her treatments. AR 549. In July 2015, Plaintiff reported "good energy levels," but was still having great difficulties with nausea, fevers, and chills. AR 546. Finally, in August 2015 at the conclusion of her interferon therapy, Plaintiff reported "doing well with the exception of persistent fevers" resulting from her treatments. AR 543.

Although there were periods when Plaintiff claimed her pain was improving or otherwise "doing well," improvement of symptoms is not inconsistent with disability. *See Lester*, 81 F.3d at 833 ("Occasional symptom-free periods . . . are not inconsistent with disability."). Because the ALJ failed to provide clear and convincing reasons why he rejected Plaintiff's testimony considering the well documented non-contradictory medical evidence supporting Plaintiff's symptom allegations, namely the side effects continuing during twelve months of chemotherapy, the ALJ's determination is not supported by substantial evidence and is erroneous.

2. Statements by Plaintiff's Sister

"In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane

reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs by failing to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen*, 100 F.3d at 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores *uncontradicted* lay witness testimony that is highly probative of a claimant's condition, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

Plaintiff's sister submitted an undated letter describing the difficulty Plaintiff faced while undergoing treatment for her melanoma. AR 274. The letter indicates that after Plaintiff's April 2014 cancer diagnosis, Plaintiff suffered both mentally and physically, and that her treatment "affected every aspect of [Plaintiff's] day to day life." *Id.* Plaintiff was reportedly unable to continue work while undergoing interferon treatment. She was unable to perform activities of daily living, such as making meals for herself or her fiancé, doing the dishes, doing laundry, sweeping or mopping, or bathing her dogs. Plaintiff was also unable to drive and required the help of family and friends to get to and from her medical appointments in Eugene

multiple days per week. During this time, Plaintiff's sister moved in with Plaintiff and her fiancé to help physically and financially. *Id.*; AR 63. After moving in, Plaintiff's sister helped with basic chores and observed Plaintiff's adverse reactions to the interferon treatment, including nausea, fevers, pains, and constant fatigue. Plaintiff's sister indicated that these reactions continued for more than one year, with continuing "negative effects" on Plaintiff's body.

The ALJ gave "some weight" to these statements, but, because of Plaintiff's improvement with treatment and ability to return to work, found that the symptoms did not last for more than one year. AR 21-22. The Commissioner again relies on Plaintiff's improvement as a germane reason. The ALJ's reasoning here fails for the same reason as discussed above.

## B. Remand

Within the Court's discretion under 42 U.S.C. § 405(g) is the "decision whether to remand for further proceedings or for an award of benefits." *Holohan*, 246 F.3d at 1210 (citation omitted). Although a court should generally remand to the agency for additional investigation or explanation, a court has discretion to remand for immediate payment of benefits. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099-1100 (9th Cir. 2014). The issue turns on the utility of further proceedings. A court may not award benefits punitively and must conduct a "credit-as-true" analysis on evidence that has been improperly rejected by the ALJ to determine if a claimant is disabled under the Social Security Act. *Strauss v. Comm'r of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

In the Ninth Circuit, the "credit-as-true" doctrine is "settled" and binding on this Court. *Garrison v. Colvin*, 759 F.3d 995, 999 (9th Cir. 2014). The court first determines whether the ALJ made a legal error and then reviews the record as a whole to determine whether the record is fully developed, the record is free from conflicts and ambiguities, and there is any useful purpose in further proceedings. *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015).

Only if the record has been fully developed and there are no outstanding issues left to be resolved does the district court consider whether the ALJ would be required to find the claimant disabled on remand if the improperly discredited evidence were credited as true. *Id.* If so, the district court can exercise its discretion to remand for an award of benefits. *Id.* The district court retains flexibility, however, and is not required to credit statements as true merely because the ALJ made a legal error. *Id.* at 408.

Plaintiff argues that when the improperly rejected testimony described above is credited as true, the ALJ would be required to find that Plaintiff is disabled for the closed period of May 21, 2014, to August 1, 2015. The Commissioner responds that, upon a finding of legal error, the proper course is to remand for further administrative proceedings.

It is undisputed that Plaintiff had to travel from Roseburg to Eugene three days per week for chemotherapy treatment during the closed period. This took several hours for travel and treatment. Even if Plaintiff was able to find a job with a flexible schedule that would allow her to have two of those treatments on her days off, one treatment per week would be during a normal work day. Logic dictates that she would not have been able to work a regular work day on the same day she received treatment based on the logistics of travel and treatment time. Additionally, the record is replete with evidence that Plaintiff's chemotherapy treatments caused fevers, nausea, and other complications. Even if those side effects only affected her on the day of treatment and did not cause problems on any other day (and the record supports that her side effects lasted longer than the day of treatment), that would still mean Plaintiff missed one day of work per week, meaning four days of work per month.

The VE testified that an employee who misses two days of work per month would not be employable in the jobs he testified that Plaintiff could perform. AR 80. Thus, even though the

ALJ did not proceed past step two in the analysis, based on the testimony of the VE, the record is sufficiently developed and there would be no useful purpose for further administrative proceedings. Because Plaintiff would have missed at least four days of work per month, she was not employable for the closed period May 21, 2014 through August 1, 2015. Remand for a calculation of benefits for that closed period is appropriate in this case.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 30th day of April, 2019.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge